UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLOS A. SANTIAGO, MELISSA A. LAFFREDO,

|  |  |  |
|---|---|---|
| | Plaintiffs, | Case # 19-CV-6860-FPG |
| v. | | DECISION AND ORDER |
| CITY OF ROCHESTER, et al., | | |
| | Defendants. | |

## INTRODUCTION

*Pro se* Plaintiffs Carlos A. Santiago and Melissa A. Laffredo bring this civil rights action against the City of Rochester (hereafter, "the City"), Christopher Renz, and four John Does (collectively, "Defendants"), claiming (1) false arrest; (2) false imprisonment; (3) malicious prosecution; (4) excessive force as to Laffredo; (5) failure to intervene; (6) conspiracy to violate Plaintiffs' constitutional rights; and (7) a "policy, custom, and practice" and "failure to supervise and train" claim against the City. ECF No. 7 at 2-8. On October 25, 2023, Defendants moved for summary judgment on all of Plaintiffs' claims. ECF No. 86. Plaintiffs oppose the motion, ECF No. 100, and move to amend Laffredo's declaration submitted in opposition to the motion to dismiss, ECF No. 105. For the reasons that follow, Defendants' motion for summary judgment is GRANTED and Plaintiffs' motion to amend is DENIED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the

non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).  *Pro se* litigants "must be given extra latitude, particularly on a summary judgment motion."  *Barrett v. Moody*, No. 19-CV-190, 2023 WL 2898310, at *6 (W.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, 2023 WL 2898659 (Apr. 10, 2023) (internal quotation marks omitted).

## BACKGROUND

Among other evidence, the parties provide video footage taken from police bodycams, which depicts the encounter between Plaintiffs, Renz, and other police officers.  Video footage can, but does not always, conclusively establish facts for purposes of summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 379-80 (2007); *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017).  Where a videotape "leaves no doubt as to what occurred," *United States v. Paul*, 904 F.3d 200, 203 (2d Cir. 2018), a district court need not countenance contrary factual assertions.  *See Scott*, 550 U.S. at 380; *Heicklen v. Toala*, No. 08-CV-2457, 2010 WL 565426, at *2 (S.D.N.Y. Feb. 18, 2010).  Conversely, if the video evidence is "ambiguous" or otherwise inconclusive, *Hicks v. Vill. of Ossining*, No. 12-CV-6874, 2016 WL 345582, at *5 (S.D.N.Y. Jan. 27, 2016), a court must employ its usual summary judgment standards and construe the evidence in the non-moving party's favor.  *Accord Hulett*, 253 F. Supp. 3d at 482 ("[W]hile the video evidence submitted by the parties will certainly be considered and carefully reviewed at this juncture, . . . summary adjudication of a plaintiff's civil rights claim [is permitted] only in those exceptional cases where

the video evidence in the record is sufficient to blatantly contradict one party's version of events." (internal quotation marks and brackets omitted)).

Because the initial circumstance of the police encounter with Plaintiffs is not recorded, the Court relies on the undisputed facts and recordings of the initiating 911 calls provided by Defendants, the veracity of which Plaintiffs do not dispute.[1]  *See* ECF No. 86-2.  On October 16, 2018, at 2:25 PM, Plaintiff's landlord, Andrew Schram, called 911 and requested that officers come to a multi-family dwelling he owned[2] at 32 Woodlawn Street (hereafter, "the property"). *See* ECF No. 86-2.  Schram requested help with "a tenant's boyfriend who is not supposed to be on the property."  *Id*.  In the background of the call, as acknowledged by the 911 dispatcher, the voices of a "male and female arguing" are audible.  *Id*.  The dispatcher asked Schram if there were any weapons involved in the incident; Schram initially responded "Not that I know of," but shortly after stated that the man, whom Schram identified as Santiago, "just told me he's gonna shoot me" and would "shoot [Schram] with a Desert Eagle" that Santiago had in his car.  *Id*.  Schram stated that Santiago and Laffredo might be on drugs.  *Id*.  Schram provided a description of Santiago and Laffredo's appearances, clothing, vehicle, and license plate number.  *Id*.

At 2:29 PM on the same day, Laffredo also called 911 to request officers to 32 Woodlawn Street, claiming that Schram was trying to remove Laffredo's vehicle from the property and "swore at" her.  *Id*.  When asked if Schram had "put his hands on" her, Laffredo said Schram had not.  *Id*. Laffredo further denied that any weapons or drugs were involved.  *Id*.  Laffredo provided a description of Schram's appearance, clothing, vehicle, and license plate number.  *Id*.  Defendants

---

[1] Plaintiffs provide with their opposition an apparently self-made transcript of Schram's 911 call that accurately reflects—albeit with added editorial notes—the audio recording provided by Defendants.  *See* ECF No. 100 at 52-60.

[2] Santiago claims in his declaration that Schram "was NOT the legal owner" of the house at 32 Woodlawn in which Plaintiffs resided; he attaches a purported "certified copy" of the property's deed to that effect.  ECF No. 100 at 46, 75-77.  Because this dispute is irrelevant to Plaintiffs' claims against Defendants, the Court will not address it further.

provide a record memorializing both 911 calls, created by the City of Rochester Emergency Communications Department.  *See* ECF No. 86-3.

Rochester Police Department ("RPD") officers responded to the calls, including Renz and four other individuals: Samuel Ognibene, Michael Grawboski, Patricie Allen, and John Rivera. All of the officers, save for Rivera, had bodycams, the footage of which the Court relies upon.  *See* ECF No. 86-4.

The footage begins with Renz's camera, showing that he was the first to arrive at the scene. Upon pulling up, Renz exits his vehicle and briefly speaks with Laffredo before turning to Santiago.  Because of what Defendants describe as "a feature which captures thirty seconds of video prior to their actual activation, for which there is no audio," Renz's initial encounters with Laffredo and Santiago do not have sound.  ECF No. 86-8 at 2 n.1.  Ognibene arrives while Renz is speaking with Laffredo.  Both officers approach Santiago.  Audio begins with Laffredo asking "Why would he say that," to which Renz replies "I don't know, why would he?"  Renz then asks Santiago to put his hands behind his back before beginning a pat-frisk.  Renz states that he is checking Santiago "because someone called."  During the pat-frisk, Laffredo is seen on Renz's camera walking up the property's driveway towards Schram, who is observing with two unidentified individuals.

Renz asks if Santiago has a gun, then "Why are you here?"  Santiago replies that Laffredo lives at the property and that Schram was blocking the driveway with his car.  Renz then says that the situation was "unclear," said that Santiago was not under arrest, and escorted him with Ognibene to a police car, placing Santiago in the backseat.  Laffredo confronts and argues with the officers that they cannot put Santiago in the car and that the officers were violating "New York state law."

Renz walks up the driveway towards Schram, with Laffredo following.  Renz asks Scharm about the 911 call, to which Schram replies that Santiago threatened to shoot him.  Laffredo interjects, wishing to know "who called" and asking if Schram had "a video recording" of the purported threat.  Renz orders Laffredo to stop interrupting and go to the sidewalk to speak with one of the other officers instead.  Laffredo refuses and begins recording the conversation on her phone.  Renz continues to ask Schram about the alleged threat, the origin of the dispute, and whether Santiago or Laffredo live on the property.  Schram goes on to say that Laffredo is being evicted, that he knew Santiago owned "a shotgun," and that Santiago had been arrested the prior week for "pulling guns" on someone.[3]  Laffredo continues to interject; Renz asks again that Laffredo walk to the sidewalk and speak with one of the other officers, to which Laffredo again refuses.

Ognibene and Grabowski then each take Laffredo by the arm and escort her down the driveway.  As she is moved, Laffredo states "Leave bruises on me, I want you to," and demands to know if she is being arrested.  Ognibene and Grabowski reply that she is "being detained" and ask her to "stop resisting," to which Laffredo responds that she is "not resisting, I stopped resisting."  Ognibene and Grabowski begin to handcuff Laffredo; Laffredo protests that they are hurting her and states "Now my hair is in the handcuffs, can someone remove my hair."[4]  The officers tell Laffredo that she is now under arrest and Allen begins a pat-frisk.  To search Laffredo's

---

[3] This may be in reference to an earlier incident in August 2018 in which police were called to handle a dispute between Plaintiffs and their neighbor after Santiago allegedly threatened the neighbor with a gun.  This incident formed the basis of another lawsuit Plaintiffs filed simultaneous to the present action, in which Plaintiffs asserted claims pursuant to Section 1983 and New York law against the City and the responding RPD officers.  *See Santiago v. City of Rochester*, 19-CV-6859, ECF No. 1, 7.  In July 2021, the Court dismissed the complaint for failure to state a claim. ECF No. 44.  Plaintiffs' amended complaint in the present matter alludes to "previous incidents involving the Plaintiffs and City of Rochester police officers," without elaboration.  ECF No. 7 ¶ 20.

[4] The angle of the bodycams does not allow the Court to verify how much, if any, of Laffredo's hair was caught in the handcuffs.  The Court will assume for the purposes of this motion that some of Laffredo's hair was caught, as agreed-upon by both parties.

handbag, which was slung across her shoulder, Grabowski unlocks the handcuffs, releases Laffredo's bag, then readministers the handcuffs.  As they remove the handcuffs, Laffredo continues to protest that the officers are hurting her wrists.  Laffredo ceases any complaints about the officers hurting her after the handcuffs are released and readministered.  The officers then place Laffredo in a police car and search the bag, finding no weapons.

While Laffredo is detained, Renz's footage shows Renz approaching Santiago, who is still in the backseat of a police car.[5]  The footage shows Renz approach the police car and ask Santiago if he has "a gun in [his] car."  Santiago denies there is a gun and states that the car belongs to Laffredo.  Renz asks if Santiago had been arrested the past week, to which Santiago replies that he wants to speak to his lawyer and that Renz was "disrespecting me."  Renz takes Santiago's phone and is shown putting it in the trunk of the police car.  Santiago further denies that he had any previous altercations on the street or threatened to shoot Schram.  Santiago instead claims that Schram had been "disrespectful" towards Laffredo.   Rivera approaches and informs Renz that, according to Schram, Santiago had previously been told to stay away from the property; Santiago denies this as well when asked, and states that he and Laffredo were at the property to move Laffredo's car.  At some point during the encounter but offscreen, Schram signed a sworn complaint in which he accused Santiago of harassment, stating that Santiago "verbally "yell[ed] . . . and threaten[ed] to shoot [Schram] with a pistol."  ECF No. 86-5.  The complaint contains

---

[5] The Court notes that, from the point that Renz approaches the police car onwards, Plaintiffs' narrative of events in the amended complaint differs significantly from the bodycam footage.  In their amended complaint, Plaintiffs claim that the officers "drew their weapons" on Santiago "[w]ithout warning" before arresting him.  ECF No. 7 ¶ 23. After returning to the police car, Renz noticed that Santiago was recording Laffredo's arrest with a phone, "became enraged," and then "ripped the phone out of Santiago's hands."  *Id*. ¶¶ 34-36.  Renz then stated to Santiago that he was "going down," that Rochester was "his City" and a police officer "could do whatever he wants," and that Renz was "going to get rid" of Santiago and Santiago would "disappear this time."  *Id*. ¶¶ 37-39.  Renz then "took [] Santiago's phone and threw it into the truck of his police vehicle," breaking the phone.  *Id*. ¶ 40.  None of these purported statements or incidents are shown in the bodycam footage, nor is there an obvious gap in the footage during which they might have taken place.

language warning that false statements are a punishable offense under New York state law. *Id*. The officers then arrest Santiago for harassment in the second degree. Renz's remaining footage shows, as relevant here, Renz driving Santiago to the police station without any relevant conversation occurring.

The remaining footage from Ognibene shows Ognibene and Renz discuss charging Laffredo with obstruction of governmental administration. Ognibene then drives Laffredo to the police station, during which he explains the obstruction charge against her. Laffredo denies any wrongdoing and complains of having "bruises on my wrists" and "bruises on my arms." No other relevant conversations or events are reflected in the footage. Defendants provided the incident reports for Plaintiffs' arrests. *See* ECF No. 86-6.

Ultimately, Plaintiffs were taken in custody and criminally charged; Santiago was charged with harassment in the second degree, and Laffredo with obstruction of governmental administration. *See* ECF No. 7 ¶ 41. The criminal charges against Plaintiffs were dismissed. *See id*. ¶ 42.

In November 2019, Plaintiffs filed the present action *pro se*. *See* ECF No. 1. The Court ordered Plaintiffs to file an amended complaint, which Plaintiffs did with the aid of retained counsel. *See* ECF Nos. 4, 7. Plaintiffs assert the following claims pursuant to Section 1983: (1) false arrest; (2) false imprisonment; (3) malicious prosecution; (4) excessive force as to the officer Defendants' treatment of Laffredo; (5) failure to intervene; (6) conspiracy to violate Plaintiffs' constitutional rights; and (7) a "policy, custom, and practice" and "failure to supervise and train" claim against the City. ECF No. 7 ¶¶ 44-104. In March 2021, Plaintiffs' counsel moved to withdraw, which the magistrate judge granted. ECF Nos. 22, 24. In August 2021, the magistrate judge granted appointment of counsel for the limited purpose of conducting discovery. ECF No.

37.  In November 2022, the magistrate judge granted Plaintiffs' appointed counsel's motion to withdraw; Plaintiffs' have since been *pro se*.  ECF No. 57.

Defendants move for summary judgment on all of Plaintiffs' claims, arguing that there is no issue of material fact; the officer Defendants' actions fall under qualified immunity regardless; and Plaintiffs have failed to provide evidence supporting the claim against the City.[6]  *See* ECF No. 86.  Plaintiffs oppose, arguing that no probable cause to arrest existed.[7]  ECF No. 100.  Along with their opposition, Plaintiffs attach other documents and evidence including, as relevant here, purported photos of Laffredo's wrists and arms that show the bruises she received during her arrest. *See* ECF No. 101-1.

Plaintiffs also move to amend Laffredo's declaration to include "new evidentiary discovery," namely text messages sent between Laffredo and Schram prior to the October 16 incident which purportedly show that Schram "had a premeditated plan" to "lodge 'trespass' charges and seek police intervention."  ECF No. 105 at 1.  Defendants replied, substantially repeating their arguments as to the existence of probable cause and opposing the motion to amend because (1) Plaintiffs failed to provide a copy of the proposed amended pleading pursuant to

---

[6] Defendants ask at various times in their motion for Plaintiffs' claims to be "dismissed."  *See, e.g.,* ECF No. 86-8 at 25, 27.  Because Defendants' motion is framed as requesting summary judgment and does so in citation to Fed. R. Civ. P. 56, the Court will refrain from interpreting the motion as alternatively seeking dismissal of the pleadings.

[7] The Court notes that, with respect to Plaintiffs' malicious prosecution, excessive force, failure to intervene, conspiracy, and *Monell* claims, Plaintiffs failed to respond to Defendants' arguments in favor of summary judgment. *See* ECF No. 100.  Plaintiffs also fail to respond to Defendants' qualified immunity arguments.  Typically, a plaintiff's failure to respond to a motion for summary judgment constitutes a waiver of any argument the plaintiff might have raised.  *See United States v. Weathers*, No. 22-CV-243S, 2024 WL 3431054, at *11 (W.D.N.Y. July 16, 2024) (holding that where a party fails to address arguments in opposition, it "concedes those arguments"); *cf. Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived.").  In light of Plaintiffs' *pro se* status, the Court chooses to overlook this failure and will address the claims regardless.  *See Davidson v. Lee*, No. 17-CV-9820, 2021 WL 5054118, at *13 (S.D.N.Y. Nov. 1, 2021) (overlooking failure to oppose due to plaintiff's *pro se* status); *Fate v. Petranker*, No. 19-CV-5519, 2022 WL 2672317, at *4 (S.D.N.Y. July 8, 2022) ("[I]n deference to the *pro se* Plaintiff and because Plaintiff did file a Rule 56.1 Counterstatement that addressed issues relevant to this claim, the Court declines to deem the claim abandoned."); *contra Tarrant v. City of Mount Vernon*, No. 20-CV-9004, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021) (acknowledging that *pro se* "[p]laintiff chose consciously, by his silence [in opposition], to waive and abandon any argument he could have made.").

federal and local rules, and (2) Plaintiffs previously had the chance to amend their complaint to include the purportedly relevant information and failed to do so.  ECF No. 108.

## DISCUSSION

Defendants move for summary judgment on all claims.  Plaintiffs move to amend.  The Court will address each argument below.

## I.     False Arrest and False Imprisonment

Although Plaintiffs put forward both "false arrest" and "false imprisonment" claims in the amended complaint, the Court will address both collectively as "false arrest," because "false arrest is considered a kind of false imprisonment, and the claims are analyzed in an identical fashion." *Smith v. City of New York*, No. 13-CV-2395, 2014 WL 4904557, at *3 (E.D.N.Y. Sept. 30, 2014) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995)).  A false arrest claim under Section 1983 requires a plaintiff to show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . under § 1983." *Id*. (citations and internal quotation marks omitted); *see also Hays v. City of New York*, No. 14-CV-10126, 2017 WL 782496, at *2 (S.D.N.Y. Feb. 28, 2017) (holding as a matter of law that plaintiff's claims for false arrest, false imprisonment, and abuse of process all "fail if there was probable cause to arrest and prosecute [her] for an offense").  "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks and citations omitted).  To determine whether probable cause existed for an arrest, a court

9

"assess[es] whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). A "claim for false arrest turns only on whether probable cause existed to arrest a defendant" and not "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Id*. at 154. "On summary judgment, the existence of probable cause or arguable probable cause may be determined as a matter of law where 'there is no dispute as to the pertinent events and the knowledge of the officers.'" *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 449 (S.D.N.Y. 2018) (quoting *Weyant*, 101 F.3d at 852).[8]

Here, the Court grants summary judgment because there was probable cause to arrest Plaintiffs. Because Plaintiffs were arrested on different charges, the Court will address whether probable cause existed as to each of them below.

### A. Probable Cause As To Santiago

The Court first analyzes whether probable cause existed to arrest Santiago for harassment in the second degree.

Pursuant to New York Penal Law § 240.26, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: [h]e . . . subjects such other person to physical contact, or attempts or threatens to do the same." "[T]hreats of violent physical contact are a violation of § 240.26(1)," and "an officer of reasonable caution could, based on [the victim's] statements, believe that [p]laintiff committed harassment in the second degree"

---

[8] The Court further notes that the dismissal of the charges against Plaintiffs does not preclude the existence of probable cause. *See Savarese v. City of New York*, 547 F. Supp. 3d 305, 330-31 (S.D.N.Y. 2021) ("[A]n arrest reflects only probable cause and not an adjudication of guilt; the criminal defendant has not had the time to marshal the witnesses and evidence in his defense. For that reason, the existence of probable cause must be based on the facts known to the arresting officer at the time of the arrest."). "If information is not known and it is exculpatory, it may lead to a decision to dismiss charges or a favorable resolution, but it does not retroactively make the initial arrest unlawful." *Id*.

when such threats are reported. *Jagdeo v. City of New York*, No. 10-CV-2838, 2012 WL 13049167, at *2 (S.D.N.Y. Oct. 18, 2012).

"Probable cause to arrest exists when the officers have . . . reasonably trustworthy information as to[] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). The information forming the basis of probable cause can be gleaned from an initiating 911 call, *see Falls v. (Police Officer) Detective Michael Pitt*, 16-CV-8863, 2021 WL 1164185, at *12 (S.D.N.Y. Mar. 26, 2021) (collecting cases to show police officers can make an arrest based on information from a 911 call), or from the statements of the alleged victim, *see Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) ("[A] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity."). Notably, "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119; *see also Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) ("Indeed, as sources of information go, crime victims are among the most reliable; they usually can provide a first-hand, nonhearsay account of the criminal activity."). The Second Circuit has "found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citation omitted).

Here, the officer Defendants were responding to Schram's 911 call, in which Schram stated that Santiago "just told me he's gonna shoot me" and would "shoot [Schram] with a Desert Eagle."

ECF No. 86-2.  Upon arriving at the scene, the officers spoke with Santiago, Laffredo, and Schram.

Schram repeated that Santiago had threatened to shoot him and stated that he knew Santiago owned

"a shotgun" and had been arrested previously for "pulling guns" on someone.  Schram also signed

a criminal complaint at the scene in which he alleged that Santiago "verbally "yell[ed] . . . and

threaten[ed] to shoot [Schram] with a pistol."  ECF No. 86-5.  Absent any indication that would

lead the officers to doubt Schram's testimony, the above circumstances provided probable cause

to arrest Santiago for harassment.  *See Curley*, 268 F.3d at 70.

Plaintiffs argue that Renz did not possess probable cause because he "instantly arrested []

Santiago while not knowing who . . . called 911" and did not locate a gun.  ECF No. 100 at 3.

These arguments are not persuasive.  First, Renz did not immediately arrest Santiago—the footage

shows that Santiago did not formally arrest Santiago until after the officers conducted their

interview with Schram.  Second, Schram provided a description of Santiago and Laffredo in his

911 call, a description which the bodycam footage reflects as being accurate to their appearance

on the day of the incident.  Third, not having located a gun does not prevent Renz from having

probable cause to arrest for harassment, which requires only "threats of violent physical contact."

*Jagdeo*, 2012 WL 13049167, at *2.

Plaintiffs further argue that the officer Defendants should not have relied upon Schram's

statements when making the arrest, as he "had a relationship [to Plaintiffs] and self-interest" that

made him unreliable.  ECF No. 100 at 5.  According to Plaintiffs, the officers should have instead

credited Plaintiffs' story: that Schram was blocking their attempt to retrieve Laffredo's car and

had invented the alleged threat.  *Id*. at 5-6.  But an "arresting officer does not have to prove

plaintiff's version wrong before arresting him."  *Curley*, 268 F.3d at 70.  "Once a police officer

has a reasonable basis for believing there is probable cause, he is not required to explore and

eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d at 123, 128 (2d Cir. 1997); *see also Toussaint v. Cnty. of Westchester*, 615 F. Supp. 3d 215, 226 (S.D.N.Y. 2022) ("This rule exists because requiring police officers to investigate exculpatory statements of the accused before making an arrest would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming it wasn't me." (internal quotation marks omitted)).   Accordingly, regardless of the feuding allegations of Schram and Santiago as to who was responsible for the situation, the officers already had sufficient facts to establish probable cause on the basis of the 911 call, their assessment at the scene, and Schram's sworn statement. *See Diggs v. McLaughlin*, No. 21-CV-5849, 2023 WL 2397409, at *5 (S.D.N.Y. Feb. 6, 2023), *report and recommendation adopted*, 2023 WL 2307412 (Mar. 1, 2023) ("Once they possess sufficient facts to establish probable cause, the police officer need not and should not sit as prosecutor, judge, or jury.").   In addition, the reliability of Schram's statement is bolstered because he attested to the alleged threat in a sworn complaint under penalty of perjury. *See* ECF No. 86-5; *see also United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996) (holding, in assessing probable cause, that "the [witness's] allegations are significantly more reliable . . . because the [witness] testified under threat of the criminal sanction for perjury").   Therefore, given the 911 call, the sworn statement of Schram, and in the absence of any evidence suggesting Schram's unreliability, Defendants had probable cause to arrest Santiago for harassment.[9]

---

[9] Plaintiffs further argue that Renz "held a hostile and morbidly contemptuous dislike" for Santiago and that Santiago's arrest was based "not on reasonable or probable cause grounds, but on hatred, contempt, and personal malice."  ECF No. 100 at 22.  Plaintiffs support this assertion by citing to alleged statements of Renz not captured by the bodycam footage, a 2017 blog post from "The Davy V. Blog" which details alleged misconduct by Renz, including violent social media posts Renz purportedly wrote, and a 2003 order from the RPD Chief of Police suspending Renz without pay for 15 days.  *See* ECF No. 100 at 61-72.  Because, however probable cause is an objective measure of the circumstances surrounding the arrest, *see Ackerson*, 702 F.3d at 19, the Court declines to address the question of Renz's alleged dislike for Santiago.

**B.  Probable Cause As To Laffredo**

The Court next analyzes the existence of probable cause to arrest Laffredo for obstructing

governmental administration.  Section 195.05 of the New York Penal Law provides, in relevant

part, that:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]

"Any interference must be physical and must obstruct an official function . . . authorized by law."

*Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (citation and quotation marks omitted).  "The

physical interference requirement is construed broadly," *Walker v. Carrozzo*, 664 F. Supp. 3d 490

(S.D.N.Y. 2023), and is met "when an individual intrudes himself into, or gets in the way of, an

ongoing police activity," *Kass v. City of N.Y.*, 864 F.3d 200, 210 (2d Cir. 2017) (alterations,

quotation marks, and citation omitted).  "[I]nappropriate and disruptive conduct at the scene of the

performance of an official function is sufficient" for the physical interference requirement, "even

if there is no physical force involved."  *Kass*, 864 F.3d at 209-10.  "To be liable for obstructing

governmental administration, a defendant must also intend to "prevent the public servant from

engaging in a specific official function."  *Reen v. City of New York*, No. 16-CV-3347, 2018 WL

4608194, at *5 (E.D.N.Y. Sept. 25, 2018) (internal quotation marks omitted).  However, courts

"afford[] [officers] great latitude in ascertaining intent" with respect to probable cause, because of

the "great practical restraints" officers face in the field.  *Fana v. City of New York*, No. 15-CV-

8114, 2018 WL 1581680, at *9 (S.D.N.Y. Mar. 27, 2018) (internal quotation marks omitted).

Here, it is undisputed that the officers were public servants or that the officers were

investigating Schram's 911 call at the time they arrest Laffredo.  The parties also do not dispute

that Laffredo protested Santiago's arrest to the officers present, *see* ECF No. 7 ¶ 29, and the bodycam footage shows that Laffredo approached the officers up the property's driveway as they attempted to interview Schram to voice her complaints.  Because they were trying hear Schram's statements, the officers asked Laffredo to move to the sidewalk where she could give her own statement.  When Laffredo failed to move, the officers asked her to stop interrupting and allow them to speak with Schram.  It was only after Laffredo continued to interject and vocally refused to move that Ognibene and Grabowski moved her from the scene and arrested her for obstructing governmental administration.  In this case, Laffredo's conduct—vocally interrupting the officers during their interview, physically refusing to move away, and repeatedly disobeying orders from the officers—satisfy the physical interference requirement for obstruction.  *See Kass*, 864 F.3d at 210 (holding that probable cause for obstruction existed where plaintiff "refused to obey the officer's repeated orders to move along"); *see also Rasmussen v. City of New York*, 766 F. Supp. 2d 399 (E.D.N.Y. 2011) ("[M]erely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction for [obstructing governmental administration]."); *People v. Romeo*, 9 A.D.3d 744, 779 N.Y.S.2d 860, 861-62 (3d Dep't 2004) (probable cause for obstruction existed where plaintiff was "belligerent, uncooperative and refused several direct requests that he keep away from the officers as they attempted to subdue his girlfriend").

As for the intent requirement, the officers here repeatedly informed Laffredo that she needed to move to the sidewalk and cease interrupting their interview with Schram.  Laffredo refused to obey the order, remained in place, and continued to interject and talk over the officers as they attempted to get Schram's statement.  Even when the officers informed Laffredo that she could provide her own story if she stepped to the sidewalk, she resumed interrupting Schram's

interview.  In light of this, and given the "great latitude" afforded to officers in determining intent

to obstruct, *see Fana*, 2018 WL 1581680, at *9, the Court finds it reasonable for the officers to

infer Laffredo's intent to obstruct their investigation, *see Kass*, 864 F.3d at 210 ("We think that it

was reasonable for the officers to infer that, based on [plaintiff's] repeated refusals to move, he

intended to interfere with their efforts").  Accordingly, probable cause to arrest Laffredo for

obstructing governmental administration existed, and summary judgment is granted as to

Laffredo's false arrest claim.

In sum, Defendants are entitled to summary judgment on Plaintiffs' false-arrest and false

imprisonment claims.[10]

## II.    Malicious Prosecution

"Regarding the cause of action for malicious prosecution, a Plaintiff must prove (1) the

initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the

proceeding in plaintiff's favor; (3) lack of probable cause for the proceeding; and (4) actual malice

as a motivation."  *Rivera*, 2015 WL 409812, at *6.  "As in claims of false arrest, probable cause is

---

[10] Defendants argue that, in the alternative, Defendants had qualified immunity from the false arrest claim.  *See* ECF No. 86-8 at 18.  Because the Court has concluded that probable cause existed, it will not address the qualified immunity argument here, nor will it do so for Plaintiffs' other claims for which the Court grants summary judgment for the reasons given below.  *Vasquez v. Cnty. of Rockland*, No. 13-CV-5632, 2020 WL 883514, at *11 (S.D.N.Y. Feb. 24, 2020) ("Because [plaintiff] has not established a constitutional violation, there is no necessity for further inquiries concerning qualified immunity." (internal quotation marks omitted)).  The Court does note, however, that "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."  *Rivera v. City of Rochester*, No. 09-CV-6621, 2015 WL 409812, at *4 (W.D.N.Y. Jan. 29, 2015).  "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"  *Id*. (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Accordingly, the test for qualified immunity "is more favorable to the officers than the one or probable cause" and "arguable probable cause will suffice to confer qualified immunity."  *Id*. (internal quotation marks omitted).

In light of this, even if the Court had not found probable cause, it would almost certainly find arguable probable cause and grant summary judgment on qualified immunity grounds.  *See, e.g., Falls*, 2021 WL 1164185, at *12 (holding that officers "undoubtedly had arguable probable cause" when they were "responding to a 911 call" describing the crime and plaintiff, the officers "had no reason to question" the credibility of the caller, and plaintiff matched the description given).

a complete defense to malicious prosecution claims." *Id.* (citing *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2003)).

Defendants argue, and the Court agrees, that the existence of probable cause necessitates granting summary judgment as to the malicious prosecution claim. Although Plaintiffs were subject to criminal proceedings that ended in their favor, *see* ECF No. 7 ¶ 68, the undisputed facts establish that the officer Defendants had probable cause to arrest Plaintiffs for the reasons given above. Because probable cause is a complete defense, the Court grants summary judgment on the malicious prosecution claim.

### III.    Excessive Force

The Court now turns to Laffredo's excessive force claim. "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *LeFever v. Clarke*, 525 F. Supp. 3d 305, 331 (N.D.N.Y. 2021) (citation omitted). "To succeed on a § 1983 excessive force claim, a plaintiff must show that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citation & internal quotation marks omitted). This "fact-specific inquiry" is informed by factors that include "the severity of the security problem at issue," the threat "reasonably perceived by the officer," and "whether the plaintiff was actively resisting." *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "Courts in this Circuit regularly hold" that to pursue an excessive force claim, the plaintiff must demonstrate (1) that the plaintiff "sustained some injury," or (2) "that officers gratuitously inflicted pain." *Pesola v. City of New York*, No. 15-CV-1917, 2016 WL 1267797, at *7 (S.D.N.Y. Mar. 30, 2016). The injury "need not be severe." *Id.* Still, "[n]ot every push or shove" is excessive force, *Graham v. Conner*, 490 U.S. 386, 397 (1989), and "a court may grant summary judgment where

the force used was *de minimis*," *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising," although even "[l]ess serious injuries will suffice . . . where the force used was excessive and gratuitous." *Vazquez v. Curcione*, No. 11-CV-443, 2013 WL 5408858, at *4 (W.D.N.Y. Sept. 25, 2013)

Here, Plaintiffs claim excessive force only with respect to the officer Defendants' treatment of Laffredo during her arrest. Plaintiffs do not specify the acts they claim to be excessive, but the Court can discern two possible incidents from the amended complaint: (1) when the officers "grabbed" Laffredo and "dragged her to a police vehicle"; and (2) when the officers "rip[ped] out Ms. Laffredo's hair" during the arrest. ECF No. 7 at 7. In assessing the excessive force claim, the Court will analyze each use of force separately. *See Tracy v. Freshwater*, 623 F.3d 90, 96-98 (2d Cir. 2010) (analyzing excessive-force claims in that manner); *Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994) (analyzing officer's actions by "carv[ing] up the incident into segments and judg[ing] each on its own terms to see if the officer was reasonable at each stage").

First, as to Laffredo's treatment while being removed to the police car, bodycam footage reflects that Ognibene and Grabowski each took Plaintiff by the arm, then moved her from the driveway down the street to the police car. Plaintiffs' amended complaint states only that the officers "grabbed" and "dragged" her, without elaborating as to what injuries she sustained. ECF No. 7 at 7. Plaintiffs did provide with their opposition, however, photographs that show Laffredo's arms and wrists, apparently taken after her arrest, that show mild bruising. ECF No. 101-1. Laffredo's statements during the drive to the police station, captured on bodycam, also depict her complaining of bruises on her arms and wrists.

Balancing the circumstances at the time of arrest, the Court acknowledges that Laffredo posed little in the way of a security threat—bodycam footage does not show her threatening the officers in any way, and the only offense for which she was arrested was a minor and nonserious one. *See McKnight v. Vasile*, No. 11-CV-6328P, 2017 WL 1176051, at *25 (W.D.N.Y. Mar. 30, 2017) ("[O]bstructing governmental administration and resisting arrest—Class A misdemeanors punishable by terms of imprisonment of not more than one year—are generally not serious crimes[.]"). Equally, however, the degree of force used to bring Laffredo to the police car was also minor. The parties agree—and the bodycam footage confirms—that the force needed to bring Laffredo aside amounted to little more than grabbing both arms and walking her a short distance. Similarly, Laffredo's injuries total little more than minor bruising, which courts have noted as a *de minimis* injury. *See Vazquez*, 2013 WL 5408858, at *4. Said bruising may nevertheless suffice if the force used was "excessive and gratuitous," *id*., but there is no sign of that being the case here, where the force involved was little more than a pull or push, *see Smith v. Fischer*, No. 13-CV-6127, 2016 WL 3004670, at *13 (W.D.N.Y. May 23, 2016) ("The force used here, which amounts to a pull of an arm, was *de minimis.*"). Accordingly, despite the mild nature of Laffredo's offense and her minimal threat to the officers, the Court nevertheless concludes that the force used and injuries sustained were minimal also, and therefore grants summary judgment as to her being pushed towards the police car.

As for Laffredo's hair having been "rip[ped] out," ECF No. 7 ¶ 32, the bodycam footage suggests that Laffredo's hair became caught in a pair of handcuffs the officers were clasping on her wrists. The footage further shows that Laffredo immediately complained of her hair being caught and, acknowledging this, the officers opened the handcuffs to free her hair and remove a handbag slung across Laffredo's shoulder. Unlike with the bruises Laffredo sustained from being

brought to the police car, Plaintiffs do not allege any lasting injuries incident to her hair becoming caught in the handcuffs, aside from this momentary discomfort.  *See Omor v. City of New York*, No. 13-CV-2439, 2015 WL 857587, at \*7 (S.D.N.Y. Feb. 27, 2015) ("Courts in this Circuit have generally found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising.").  Moreover, that the officers freed Laffredo's hair after hearing her complaint also speaks against excessive force.  *See Nix v. City of Rochester*, No. 14-CV-06395, 2017 WL 3387103, at \*4 (W.D.N.Y. Aug. 5, 2017) (granting summary judgment against excessive-force claim where, "in response to Plaintiff's assertions of discomfort, [officers] attempted to accommodate him" by adjusting the handcuffs).  Based Plaintiffs' statements and the bodycam footage, Laffredo's hair becoming caught in the handcuffs was not sufficiently serious to establish a constitutional violation.  Because there is no evidence that the officer Defendants' treatment of Laffredo "was objectively unreasonable or even unusual," *Omor*, 2015 WL 857587, at \*8, the Court grants summary judgment.[11]

## IV.    Failure to Intervene

"All law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).  "An officer may be held liable for preventable harm caused by the actions of other officers if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jackson v. City of New York*, 462 F. Supp. 3d 203, 226

---

[11] Furthermore, for substantially the same reasons stated in the Court's recent decision in *Farnsworth v. City of Geneva*, Defendants are entitled to qualified immunity insofar as they did not violate clearly established Second Circuit precedent with respect to the grabbing and handcuffing.  *See* No. 20-CV-6935, ECF No. 57 at 9-12.

(E.D.N.Y. 2020) (internal quotation marks omitted).  "A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997).  "Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights."  *Id.*

Plaintiffs' amended complaint states generally that the officer Defendants "failed to take reasonable steps to prevent their fellow officers from engaging in the illegal acts alleged herein." ECF No. 7 ¶ 83.  And in response to the motion for summary judgment, Plaintiffs provide no detail as to which officers should have intervened, what specific act the officers should have intervened to stop, the period during which intervention was necessary, or whether the officers had the opportunity to intervene in the first place.  Such conclusory allegations would typically entitle Defendants to summary judgment.  *See Jackson v. Mastrangelo*, 582 F. Supp. 3d 91, 99 (W.D.N.Y. 2022) (granting summary judgment where plaintiff's complaint "fail[ed] to provide any detail" beyond "conclusory statements" to support the failure-to-intervene claim); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *9 (W.D.N.Y. Feb. 6, 2015) ("At the summary judgment stage, much more is required than bare or conclusory allegations in the Complaint.").  Even setting this defect aside, however, the Court has already concluded that no constitutional violations occurred with respect to the arrest of Laffredo and Santiago.  Because there is no evidence of a "constitutional right . . . being violated," *Jackson*, 462 F. Supp. 3d at 226, there is consequently no evidence of a failure to intervene, *see, e.g., Savarese*, 547 F.Supp.3d at 353 (granting summary judgment on failure to intervene claim where "the evidence established at least arguable probable cause" for an allegedly false arrest and therefore plaintiff failed to show

that defendants "were required to intervene").  Accordingly, the Court grants summary judgment as to the failure to intervene claim.

V.      **Section 1983 Conspiracy**

To prove a Section 1983 conspiracy, a plaintiff "must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Namely, the plaintiff must show that the "defendants acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated [his] rights, privileges or immunities secured by the Constitution or federal courts." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 507-08 (S.D.N.Y. 2008) (internal quotation marks and citations omitted); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Conclusory, vague, or general allegations of conspiracy are insufficient, although because conspiracies are "by their very nature secretive operations, [they] may have to be proven by circumstantial, rather than direct evidence."  *Jean-Laurent*, 540 F. Supp. 2d at 508 (citing *Pangburn*, 200 F.3d at 72).  At the summary judgment stage, the nonmoving party's evidence of conspiracy "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish an unlawful plan." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018).

Defendants argue for summary judgment on the Section 1983 conspiracy claim because 1) Plaintiffs failed to provide any evidence of conspiracy; and 2) the intracorporate conspiracy doctrine precludes any claim of alleged conspiracy amongst Defendants.  The Court agrees with both arguments.  Here, Plaintiffs provide no evidence of their claim of conspiracy, save for their own conclusory allegations that Defendants "agreed to deprive Plaintiffs of their constitutional

rights." ECF No. 7 at 15. Because Plaintiffs have failed to come forward with evidence that reasonably leads to an inference of conspiracy, the Section 1983 conspiracy claim cannot survive summary judgment. *Lawrence*, 2015 WL 510048, at *9.

Moreover, to the extent that Plaintiffs allege a conspiracy among RPD officers, the intracorporate conspiracy doctrine bars the claim. Under the intracorporate conspiracy doctrine, "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Ivery*, 284 F. Supp. 3d at 440. Here, the officer Defendants are all members of a single entity—the RPD—and Plaintiffs' "only interaction with the individual defendant officers is through their professional duties, which they carried out under the color of law." *McRae v. City of Hudson*, No. 14-CV-236, 2015 WL 275867, at *8 (N.D.N.Y. Jan. 21, 2015). Accordingly, to the extent that Plaintiffs allege that the officer Defendants conspired amongst themselves, Plaintiffs' claims are barred by the intracorporate conspiracy doctrine. Therefore, summary judgment is granted.

### VI.    *Monell* Liability

A plaintiff seeking to impose liability on local governments under Section 1983 cannot rely on a theory of vicarious liability and must instead prove that "action pursuant to official municipal policy" caused his injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). A plaintiff is therefore required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995) (citations and quotations omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The policy or custom requirement may be satisfied "where a

local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

The Court concludes that the City is entitled to summary judgment. Plaintiffs' amended complaint states only in boilerplate terms that the City promoted "policies, customs, and practices" that "demonstrate[d] a deliberate indifference to the constitutional rights of persons" or failed to screen or train its officers. ECF No. 7 at 15-17. Plaintiffs' factual allegations focus purely on the actions of the officer Defendants on the day of the arrest; Plaintiffs' provide no allegations or evidence of the City's actions, or lack thereof, suggestive of a municipal policy. "Although the existence of an actionable municipal policy or custom may be inferred from the informal acts or omissions of supervisory officials," Plaintiffs here have "failed to present evidence sufficient to allow a reasonable jury to draw that inference." *McCormick v. Terwilliger*, No. 11-CV-6444, 2015 WL 5682656, at *6 (W.D.N.Y. Sept. 25, 2015). The Court therefore grants summary judgment.

## VII.    Motion to Amend

Plaintiffs request to amend Laffredo's declaration to include "significant new evidentiary discovery," namely screenshots of text messages sent between Schram and Plaintiffs "approximately one (1) hour" before Schram's 911 call on October 16, 2018 that purportedly show Schram called the police as part of a "premeditated plan" to evict Laffredo. ECF No. 105 at 1, 3-5. In the messages, Schram demands that Plaintiffs pay back rent for the property and remove Laffredo's car from the driveway. *Id*. at 3-5. Plaintiffs also provide an eviction petition filed against Laffredo in Rochester City Court seeking her removal from the property. *Id*. at 6-7.

Defendants argue that Plaintiffs have failed to comply with Local Rule 15 by not providing "a proposed Second Amended Complaint." ECF No. 108 at 1. This ignores the substance of Plaintiffs' request, which is to amend Laffredo's declaration and not to file an amended complaint. *See* ECF No. 105. Regardless, the Court declines to grant Plaintiffs' "motion to amend." The Court first notes that Plaintiffs provide no reason that they failed to previously offer this evidence, given that it was apparently in their possession since 2018. Moreover, even if the Court were to consider it, the evidence concerning Schram's motives is irrelevant to Plaintiffs' claims, which involve alleged constitutional violations by the officer Defendants and the City. Because the information Plaintiffs seek to include is immaterial, the Court accordingly denies leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 86) is GRANTED. Plaintiffs' motion for leave to amend is DENIED. The Clerk of Court is directed to enter judgment in favor of Defendants and close the case.

IT IS SO ORDERED.

Dated: September 25, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court